**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICHA MCDAID, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br><br>AVANT, LLC f/k/a AVANT, INC.<br><br>      Defendant. | CASE NO. 2:21-cv-01135-LPL |

## <u>DEFENDANT AVANT LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS</u>

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................. 2

III.    ARGUMENT AND CITATION TO AUTHORITY ........................................ 4

        A.      Legal Standard ..................................................................................... 4

        B.      The prerequisites under the FAA for enforcement of arbitration
                agreements are clearly satisfied .......................................................... 5

                1.      The parties' arbitration agreement is in writing and enforceable ............. 6

                2.      The Loan plainly affected and/or involved interstate commerce ............... 7

                3.      The broad language in the parties' Arbitration Provision covers the
                        claims asserted against Avant in this action ........................................... 10

        C.      All of Plaintiff's claims against Avant should be dismissed ............... 12

IV.     CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Parts Distrib. Xpress, Inc.*,
2021 U.S. Dist. LEXIS 52822 (E.D. Pa. Mar. 22, 2021)............................................................4

*Alford v. Dean Witter Reynolds, Inc.*,
975 F.2d 1161 (5th Cir. 1992) ....................................................................................................13

*Allied–Bruce Terminix Inc. v. Dobson*,
513 U.S. 265 (1995)......................................................................................................................9

*Am. Express Co. v. Italian Colors Restaurant*,
570 U.S. 228 (2013)......................................................................................................................2

*Ario v. Underwriting Members of Syndicate 53 at Lloyds*,
618 F.3d 277 (3d Cir. 2010).........................................................................................................7

*AT&T Mobility v. Concepcion*,
563 U.S. 333 (2011)..................................................................................................................2, 7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)...............................................................................................................11, 12

*Berryman v. Newalta Envtl. Servs.*,
2018 U.S. Dist. LEXIS 186789 (W.D. Pa. Nov. 1, 2018) .........................................................5

*Blake v. Murphy Oil USA, Inc.*,
2010 WL 3717245 (N.D. Miss. Sept. 14, 2010) .......................................................................13

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)......................................................................................................................7

*Camps Newfound/Owatonna, Inc. v. Town of Harrison*,
520 U.S. 564 (1997)......................................................................................................................8

*Central Florida Invs., Inc. v. Parkwest Assocs.*,
40 P.3d 599 (Utah 2002)...............................................................................................................7

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003)........................................................................................................................9

*Clerk v. ACE Cash Express, Inc.*,
2010 U.S. Dist. LEXIS 7978 (E.D. Pa. Jan. 29, 2010) ...............................................................9

*Comrey v. Discover Fin. Servs.*,
  806 F. Supp. 2d 778 (M.D. Pa. 2011) ............................................................................. 10

*Davies v. Green Tree Servicing, LLC*,
  2015 U.S. Dist. LEXIS 78772 (M.D. Pa. June 18, 2015) ................................................. 8

*Docutel Olivetti Corp. v. Dick Brady Sys., Inc.*,
  731 P.2d 475 (Utah 1986) ................................................................................................ 7

*Dougherty v. VFG, LLC*,
  118 F. Supp. 3d 699 (E.D. Pa. 2015) ............................................................................... 9

*Duffy v. Am. Gen. Life Ins. Co.*,
  2020 U.S. Dist. LEXIS 222365 (W.D. Pa. Nov. 30, 2020) ............................................ 10

*First Family Fin. Servs., Inc. v. Fairley*,
  173 F. Supp. 2d 565 (S.D. Miss. 2001) .......................................................................... 10

*Ford Motor Co. v. Milhollin*,
  444 U.S. 555 (1980) ......................................................................................................... 8

*Gillespie v. Colonial Life & Accident Ins. Co.*,
  2009 U.S. Dist. LEXIS 26310 (W.D. Pa. Mar. 30, 2009) .......................................... 6, 11

*Hrapczynski v. Bristlecone, Inc.*,
  2021 U.S. Dist. LEXIS 141433 (E.D. Pa. July 29, 2021) ................................................ 5

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011) ........................................................................................................... 1

*Lewis v. BT Inv. Managers, Inc.*,
  447 U.S. 27 (1980) ........................................................................................................... 8

*Lewis v. UBS Fin. Servs.*,
  818 F. Supp. 2d 1161 (N.D. Cal. 2011) ......................................................................... 13

*Lindon City v. Engineers Constr. Co.*,
  636 P.2d 1070 (Utah 1981) .............................................................................................. 6

*Liptak v. Accelerated Inventory Mgmt., LLC*,
  2021 U.S. Dist. LEXIS 31008 (W.D. Pa. Feb. 19, 2021) ............................................... 10

*Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*,
  334 U.S. 219 (1948) ......................................................................................................... 9

*Marmet Health Care Ctr., Inc. v. Brown*,
  565 U.S. 530 (2012) ......................................................................................................... 2

*Mayer v. Belichick*,
    605 F.3d 223 (3d Cir. 2010)...................................................................................................4

*McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*,
    858 F.2d 825 (2d Cir. 1988)...............................................................................................10

*Medtronic AVE Inc. v. Cordis Corp.*,
    100 Fed. Appx. 865 (3d Cir. 2004).....................................................................................11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)...............................................................................................................1

*Morina v. Neiman Marcus Group, Inc.*,
    2014 U.S. Dist. LEXIS 141533 (E.D. Pa. Oct. 1, 2014).....................................................13

*Mourning v. Family Publ'n Serv.*,
    411 U.S. 356 (1973)...............................................................................................................9

*N. Health Facilities v. Batz*,
    993 F. Supp. 2d 485 (M.D. Pa. 2014)...................................................................................7

*Noye v. Johnson & Johnson*,
    2020 U.S. Dist. LEXIS 38610 (M.D. Pa. Mar. 5, 2020)....................................................13

*Ranginwala v. Citibank, N.A.*,
    2020 U.S. Dist. LEXIS 217307 (D.N.J. Nov. 19, 2020)......................................................6

*Richards v. Am. Acad. Health Sys., LLC*,
    2020 U.S. Dist. LEXIS 90183 (E.D. Pa. May 22, 2020) ......................................................5

*Saechow v. Phila. Academic Health Sys.*,
    2021 U.S. Dist. LEXIS 62424 (E.D. Pa. Mar. 31, 2021)......................................................5

*Sanchez v. MK Indus., Inc.*,
    2016 WL 379743 (S.D. Miss. Jan. 29, 2016) .....................................................................13

*Santana v. A.L. Recovery, LLC*,
    2018 U.S. Dist. LEXIS 138652 (W.D. Pa. Aug. 16, 2018) ..................................................5

*Silfee v. Auto. Data Procesing, Inc.*,
    969 Fed. Appx. 576 (3d Cir. 2017)........................................................................................4

*Staples v. Money Tree*,
    936 F. Supp. 856 (M.D. Ala. 1996) ......................................................................................8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)...............................................................................................................2

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
  368 F.3d 1053 (9th Cir. 2004) ...........................................................................13

*United States v. Owens*,
  159 F.3d 221 (6th Cir. 1998) ................................................................................8

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) ...........................................................................................11

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
  489 U.S. 468 (1989) .......................................................................................7, 10

*Zeller-Landau v. Sterne Agee CRT, LLC*,
  2018 U.S. Dist. LEXIS 3532 (E.D. Pa. Jan. 9, 2018) ..........................................11

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ........................................................... *passim*

Consumer Discount Company Act, 7 P.S. § 6201, *et seq.* ..........................................1, 4

Loan Interest Protection Law, 41 P.S. § 201, *et seq.* ...................................................1, 4

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................1, 4, 5

Federal Rule of Civil Proceudre 56 ...............................................................................4

### DEFENDANT AVANT LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS

**COMES NOW** Defendant Avant, LLC ("Avant" or "Defendant"), by and through its undersigned counsel, and pursuant to Sections 2, 3, and 4 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), and Federal Rule of Civil Procedure 12(b)(6), hereby moves this Court for an Order compelling the individual arbitration of the claims asserted against Avant by Plaintiff Patricha McDaid ("McDaid" or "Plaintiff") and dismissing such claims with prejudice.  In support of this Motion, Avant respectfully states as follows:

## I.      INTRODUCTION

In her Class Action Complaint (the "Complaint") originally filed in the Court of Common Pleas of Allegheny County, McDaid asserts claims against Avant for supposed violations of the Loan Interest Protection Law, 41 P.S. § 201, *et seq.* (the "LIPL"), the Consumer Discount Company Act, 7 P.S. § 6201, *et seq.* (the "CDCA"), and the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201, *et seq.* (the "UTPCPL").  In short summary, and according to McDaid, Avant allegedly charged excessive interest on its loan to McDaid and other members of the putative class.

As detailed below, McDaid's loan with Avant is subject to a valid and enforceable arbitration and class waiver agreement.  Accordingly, pursuant to the FAA, each of McDaid's claims must be submitted to binding, non-class arbitration.  The U.S. Supreme Court has repeatedly stated that the FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution'"[1] and that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration

---

[1] *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

agreements are enforced according to their terms.'"[2]  Indeed, *AT&T Mobility* and following decisions from the U.S. Supreme Court hold that arbitration agreements must be enforced as written.  *See*, *e.g.*, *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532 (2012).

Here, the arbitration and class waiver agreement encompasses McDaid's claims against Avant.  It provides that any legal claim, dispute, or controversy between McDaid and Avant that arises from or relates in any way to the loan falls within the agreement's scope.  McDaid's claims— that Avant charged too much interest on her loan—plainly relate to and arises from the loan's terms and are subject to individual arbitration.

Counsel for Avant has asked Plaintiff's lead counsel if he and his client will stipulate to arbitration.  For reasons unknown, it appears that Plaintiff will not so stipulate and Avant has therefore filed this Motion.  For the following reasons, this Court should grant the Motion and compel McDaid's claims relating to the loan to individual arbitration pursuant to the parties' arbitration and class waiver agreement.

## II.    FACTUAL BACKGROUND

On or about August 25, 2017, McDaid entered into a Loan Agreement and Promissory Note (the "Loan").  (*See* **Exhibit A**, Declaration of Bhanu Arora ("Avant Decl."), ¶ 6.)  The Loan contains an explicit arbitration provision (the "Arbitration Provision") requiring McDaid to arbitrate all claims against Avant. (Avant Decl., ¶¶ 8-9.)  Attention is called to the Arbitration Provision in the very first sentence of the Loan, in bold, all-caps, and enlarged font that reads:

---

[2] *AT&T Mobility v. Concepcion*, 563 U.S. 333, 344 (2011); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) ("[u]nderscoring the consensual nature of private dispute resolution" is the notion that "parties are 'generally free to structure their arbitration agreements as they see fit'") (citations omitted).

2

**SECTION 20 OF THIS LOAN AGREEMENT AND PROMISSORY NOTE IS AN ARBITRATION PROVISION.  IN THE EVENT OF A DISPUTE, THE ARBITRATION PROVISION WILL HAVE A SUBSTANTIAL EFFECT ON YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING OR PARTICIPATE IN A CLASS ACTION.**

The Arbitration Provision provides, in pertinent part, as follows:

In arbitration, a third party ("TPA") resolves Disputes in a hearing ("hearing").  It is less formal than a court case.

The hearing is private. There is no jury. It is usually less formal, faster, and less expensive than a lawsuit. Pre-hearing fact-finding (called "discovery") is limited. Appeals are limited. Courts rarely overturn arbitration awards.

This Clause governs "Disputes" that would usually be decided in court and are between us (or any Related Party) and you. In this Clause, the word "Disputes" has the broadest reasonable meaning. It includes all past, present and future claims directly or indirectly arising from or related to your application, this Agreement, your loan and relationship with us and any communications relating to the same. It includes claims based on contract, tort, intentional tort, fraud, negligence, agency, equity, statute or regulation, or any other sources of law, claims seeking damages or injunctive or declaratory relief and initial claims, counterclaims, cross-claims, third-party claims. It includes claims related to any prior applications or agreements. It includes extensions. It includes claims related to privacy and customer information. It includes claims related to the validity in general of this Agreement. **But, it does not include disputes about the validity, coverage, or scope of this Clause or any part of this Clause. All such disputes are for a court and not the TPA to decide.**

**For Disputes subject to this Clause, you and we give up our rights to: (1) Have juries decide Disputes; (2) Have courts, other than small-claims courts, decide Disputes; (3) Serve as a private attorney general or in a representative capacity; (4) Join or consolidate a Dispute with disputes by other parties; (5) Bring or be a class member in a class action claim or lawsuit, including as a representative or member, or class arbitration.**

This Agreement involves interstate commerce. Thus, the FAA governs this Clause. The TPA must apply applicable substantive law consistent with the FAA. The TPA must honor statutes of limitation and privilege rights. Punitive damages are governed by the constitutional standards that apply in judicial proceedings. The TPA may award any damages or equitable relief provided for under applicable law for an individual action.

The Clause stays effective unless the parties sign an agreement stating it doesn't. This Clause stays in force even if you default under your Agreement or go into or

3

through bankruptcy or if the Agreement is assigned, terminated or is no longer in effect.

(*See* Avant Decl. at Ex. 1, pp. 6-9) (emphasis in original).

By its plain terms, the Arbitration Provision binds the parties to arbitrate any claims between them.  (*See id.*)  Nevertheless, on or about July 23, 2021, Plaintiff filed a Complaint against Avant asserting claims under the Loan Interest Protection Law, 41 P.S. §§ 201, *et seq.* ("LIPL"), the Consumer Discount Company Act, 7 P.S. §§ 6201, *et seq.* ("CDCA"), and the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201, *et seq.* ("UTPCPL") in the Court of Common Pleas of Allegheny County, Pennsylvania, concerning the terms of the Loan.  (*See* Dkt. 1.)  Avant then timely removed the case to this Court.  (*Id.*)  Plaintiff's claims against Avant all arise out of the Loan and are covered by the Arbitration Provision.  As a result, Avant is entitled to compel them to arbitration.

## III.   ARGUMENT AND CITATION TO AUTHORITY

### A.   Legal Standard

Motions to compel arbitration are decided under the dismissal standard of Federal Rule of Civil Procedure 12(b)(6) where the motion depends entirely on the pleadings or materials that are integral to or relied upon in the complaint.  *See Silfee v. Auto. Data Procesing, Inc.*, 969 Fed. Appx. 576, 578-79 (3d Cir. 2017); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (holding that under Rule 12(b)(6), the court must consider "undisputedly authentic documents if the complaint's claims are based upon these documents").  Even though McDaid did not append the Loan to her complaint, the Court may still consider the Loan in deciding this Motion under Rule 12(b)(6) without converting the Motion to one for summary judgment under Rule 56.  *See, e.g.*, *Adams v. Parts Distrib. Xpress, Inc.*, 2021 U.S. Dist. LEXIS 52822, at *4 n.3 (E.D. Pa. Mar. 22, 2021) (holding that the court may consider documents referenced in (but not attached to) the

4

complaint under the motion to dismiss standard when deciding a motion to compel arbitration); *Richards v. Am. Acad. Health Sys., LLC*, 2020 U.S. Dist. LEXIS 90183, at *9 n.4 (E.D. Pa. May 22, 2020) ("The contract containing the arbitration clause does not need to be attached to the operative complaint" to resolve a motion to compel arbitration under the Rule 12(b)(6) standard).

Here, the Loan is not just integral to the Complaint, it is sole basis for McDaid's claims. The gravamen of this case is that Avant allegedly charged interest above the permitted rate in its loans to McDaid and the putative class. Without the existence of the Loan, McDaid's claims would not exist. The Loan is also explicitly referenced throughout the Complaint. *See* Compl. at ¶¶ 26-39, 53, 55-60, 74, 75, 81, 84. Accordingly, the Court can and should decide this Motion under Rule 12(b)(6). *See also Hrapczynski v. Bristlecone, Inc.*, 2021 U.S. Dist. LEXIS 141433, at *6 (E.D. Pa. July 29, 2021) (holding that the court could consider an arbitration agreement that was not attached to the complaint because it was integral to the plaintiff's claims and "it would frustrate the purposes of the [FAA] if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints"); *Berryman v. Newalta Envtl. Servs.*, 2018 U.S. Dist. LEXIS 186789, at *12 n.4 (W.D. Pa. Nov. 1, 2018) (similar); *Santana v. A.L. Recovery, LLC*, 2018 U.S. Dist. LEXIS 138652, at *11-12 (W.D. Pa. Aug. 16, 2018) (similar); *Saechow v. Phila. Academic Health Sys.*, 2021 U.S. Dist. LEXIS 62424, at *6 n.8 (E.D. Pa. Mar. 31, 2021) (considering documents that were relied on by the complaint and attached to the motion to compel arbitration under Rule 12(b)(6)).

**B.**      **The prerequisites under the FAA for enforcement of arbitration agreements are clearly satisfied.**

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. An arbitration agreement is specifically enforceable under the FAA

5

if the following three requirements are met:  (1) the existence of a written agreement to arbitrate claims; (2) a nexus to interstate commerce; and (3) coverage of the claims by the arbitration clause at issue.  9 U.S.C. § 2.  Here, all of these elements are clearly satisfied.

1.      The parties' arbitration agreement is in writing and enforceable.

The subject Arbitration Provision is in writing and digitally signed by McDaid on August 25, 2017.  (*See* Avant Decl., Ex. 1 thereto at p. 10.)  Therefore, the first prerequisite to enforcement of the Arbitration Provision is undoubtedly satisfied here.  *See* 9 U.S.C. § 2.

The Loan, which contains the Arbitration Provision, is expressly governed by a Utah choice-of-law provision.  (Avant Decl., ¶¶ 6 and 13, Exhibit 1 at p. 5.)  While the FAA exclusively governs the enforceability of the Arbitration Provision according to its terms, Utah law governs the determination of whether a valid agreement to arbitrate exists.  See *Gillespie v. Colonial Life & Accident Ins. Co.*, 2009 U.S. Dist. LEXIS 26310, at *10-11 (W.D. Pa. Mar. 30, 2009) (adhering to an arbitration agreement's choice of law provision to determine the validity of the agreement); *Ranginwala v. Citibank, N.A.*, 2020 U.S. Dist. LEXIS 217307, at *10 (D.N.J. Nov. 19, 2020) ("formation of the contract in this case is governed by South Dakota law as the Agreement contains a choice of law provision.").

There can be no dispute that valid agreement to arbitrate exists between McDaid and Avant under Utah law.  Indeed, Utah law recognizes arbitration as a matter of contract, and provides that arbitration agreements should be liberally interpreted to favor arbitration and should be enforced according to the terms the parties have agreed upon.  *See Lindon City v. Engineers Constr. Co.*, 636 P.2d 1070, 1073 (Utah 1981) ("Arbitration is a contractual remedy . . . freely bargained for by the parties, and provides a means of giving effect to the intention of the parties, easing court congestion, and providing a method more expeditious and less expensive for the resolution of

disputes. There is a strong public policy in favor of such a remedy."); *accord Docutel Olivetti Corp. v. Dick Brady Sys., Inc.*, 731 P.2d 475, 479-480 (Utah 1986); *Central Florida Invs., Inc. v. Parkwest Assocs.*, 40 P.3d 599 (Utah 2002).

Here, McDaid signed the Loan containing the clearly disclosed Arbitration Provision requiring arbitration at the election of either party. At no time did McDaid send Avant a notice of rejection with respect to the Arbitration Provision contained in the Note. (Avant Decl., ¶ 10.) Accordingly, under governing Utah law, the Arbitration Provision is valid and binding on McDaid.

2.    The Loan plainly affected and/or involved interstate commerce.

The Loan plainly affects interstate commerce, thus satisfying the second prerequisite to enforcement of the Arbitration Provision. Indeed, the Loan itself expressly provides that "[t]his Agreement involves interstate commerce. Thus, the FAA governs this Clause." (*See* Avant Decl., Ex. 1 thereto at p. 8.)

As the Supreme Court has noted, courts "must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility*, 131 S. Ct. at 1746-47 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989)) (internal citations omitted). When a contract expressly provides that the FAA controls, courts must enforce that stipulation and apply the FAA to the arbitration agreement contained in the contract. *See Volt Info. Scis.*, 489 U.S. at 478-79 (upholding choice of California law to govern arbitration although interstate commerce was involved because applying federal law would have forced parties to arbitrate in a manner contrary to their agreement); *N. Health Facilities v. Batz*, 993 F. Supp. 2d 485, 492 (M.D. Pa. 2014) (quoting *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 288 (3d Cir. 2010)) (applying the FAA and compelling arbitration of claims covered by

binding arbitration agreement).  Because the Loan expressly provides that the FAA controls, the second prerequisite to enforcement of the Arbitration Provision is satisfied.

Moreover, the underlying loan transaction "involves" interstate commerce as required by Section 2 of the FAA.  It is axiomatic that the delivery, transfer, or movement of goods, services, or other articles of commerce "across state lines has long been recognized as a form of 'commerce.'"  *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 573 (1997); s*ee also Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 36 (1980).  This is particularly true where money is the "article" delivered, transferred, or moved across state lines.  *See*, *e.g.*, *United States v. Owens*, 159 F.3d 221, 226 (6th Cir. 1998); *Staples v. Money Tree*, 936 F. Supp. 856, 858 (M.D. Ala. 1996); *see also generally Ford Motor Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980) (discussing "commerce in credit" in connection with the Federal Truth-in-Lending Act).  For that reason, courts addressing the issue have consistently held that the FAA applies to contracts where money moves across state lines.[3]

In pertinent part, the FAA dictates that:

> A written provision in maritime transaction or a contract ***evidencing a transaction involving commerce*** to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[3] Notably, "commerce" under the FAA is not limited to interstate shipment of goods, but rather includes all contracts relating to interstate commerce, such as loan agreements involving transactions with connections to more than one state.  *See Davies v. Green Tree Servicing, LLC*, 2015 U.S. Dist. LEXIS 78772, at *11 (M.D. Pa. June 18, 2015) ("The court finds that the FAA does apply in this case since the [Plaintiff's] borrowing of money secured by their real property is a transaction that affects interstate commerce sufficient for Congress to regulate it, and since the parties' loan documents expressly provided that the FAA governs their arbitration . . .").

8

9 U.S.C. § 2 (emphasis added).  The term "involving commerce" in the FAA has been interpreted as the functional equivalent of the more familiar term "affecting commerce" and "encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce.'"  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied–Bruce Terminix Inc. v. Dobson*, 513 U.S. 265, 273 (1995)).  As a result, "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal court.'"  *Id*. at 56-57 (citing *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)); *see also Dougherty v. VFG, LLC*, 118 F. Supp. 3d 699, 711 (E.D. Pa. 2015) (quoting *Allied–Bruce Terminix Inc.*, 513 U.S. at 277).

Given this standard, the Loan unquestionably involved and/or affected interstate commerce.  Indeed, Plaintiff is a resident of Pennsylvania (Compl., ¶ 5) and Avant is a Delaware corporation headquartered in Illinois.  (Avant Decl., ¶ 12; Compl., ¶ 6.)  The Loan was funded by monies from outside the State of Pennsylvania.  (Avant Decl., ¶ 7.)  Therefore, the "interstate commerce" requirement is met.  *See Clerk v. ACE Cash Express, Inc.*, 2010 U.S. Dist. LEXIS 7978 (E.D. Pa. Jan. 29, 2010) (compelling arbitration of consumer loan dispute and finding that the loan involved interstate commerce).

Moreover, the loan transaction was extensively regulated by the federal government by virtue of its plenary powers under the Commerce Clause.  For instance, agreements such as the one at issue must comply with several federal laws and regulations, including the federal Truth-in-Lending Act, which has as its genesis the Commerce Clause.[4]  Because "[t]he financing

---

[4] *See Mourning v. Family Publ'n Serv.*, 411 U.S. 356, 377 (1973) (explaining that the power to enact the Truth-in-Lending Act was granted to Congress under the Commerce Clause).

transaction, itself, must comply with federal laws and regulations including the Truth-in-Lending Act . . . a nexus exists between the arbitration agreement in this case and interstate commerce." *First Family Fin. Servs., Inc. v. Fairley*, 173 F. Supp. 2d 565, 573 (S.D. Miss. 2001).  Thus, given the undisputed federal regulation of the consumer credit transaction at issue, the Loan "affects" interstate commerce so as to bring into play the FAA.

Whether by the parties' agreement that the FAA shall apply, or by the fact that their transaction involves interstate commerce, there is no doubt that the FAA applies.  Accordingly, the second prerequisite to enforcement of the parties' Arbitration Provision is therefore met.

3. <u>The broad language in the parties' Arbitration Provision covers the claims asserted against Avant in this action.</u>

Finally, the Arbitration Provision encompasses the claims in this action.  When determining the scope of an arbitration provision, "the focus is on the factual underpinnings of the claim." *Duffy v. Am. Gen. Life Ins. Co.*, 2020 U.S. Dist. LEXIS 222365, at *18 (W.D. Pa. Nov. 30, 2020) (citations and alterations omitted); *see also Comrey v. Discover Fin. Servs.*, 806 F. Supp. 2d 778, 785 (M.D. Pa. 2011) (granting motion to compel arbitration and finding that "the presumption of arbitrability is particularly strong when the parties contractually agree to an arbitration provision broadly encompassing all disputes arising from or relating to the agreement.").  Additionally, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Scis.*, 489 U.S. at 476; *see also Comrey*, 806 F. Supp. 2d at 784; *Liptak v. Accelerated Inventory Mgmt., LLC*, 2021 U.S. Dist. LEXIS 31008, at *4 (W.D. Pa. Feb. 19, 2021).

In construing arbitration clauses, courts distinguish between "broad" clauses that purport to cover all disputes "arising out of" or "relating to" a contract, and "narrow" ones that limit arbitration to specific types of disputes. *See, e.g., McDonnell Douglas Fin. Corp. v. Pa. Power &*

10

*Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988); *Zeller-Landau v. Sterne Agee CRT, LLC*, 2018 U.S. Dist. LEXIS 3532, at *10 (E.D. Pa. Jan. 9, 2018) (compelling arbitration under clause that was "broad in scope and cover[ed] 'any claim, dispute or controversy that arises out of or related to Employee's employment with Employer or the termination of that employment.'").  If a court concludes that a particular arbitration provision is a "broad" one, the presumption in favor of arbitrability applies with even greater force.  *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  Moreover, "[c]ourts have determined that an arbitration clause that uses 'language such as 'any dispute arising out of or relates to' the agreement, or disputes that are 'in connection with' the agreement is characterized as broad."  *Gillespie*, 2009 U.S. Dist. LEXIS 26310, at *24-25 (collecting cases and compelling arbitration under broad agreement).

The presumption of arbitrability, created by the mere existence of an arbitration clause, can be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *AT&T Techs., Inc.*, 475 U.S. at 650 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)); *Medtronic AVE Inc. v. Cordis Corp.*, 100 Fed. Appx. 865, 866-67 (3d Cir. 2004).  For that reason, to exclude a claim from arbitration, there must be an express provision within the original contract between the parties that excludes a particular grievance.  *See United Steelworkers*, 363 U.S. at 584-85.

The Arbitration Provision is broad enough in scope to encompass the claims and allegations in this action.  The Arbitration Clause broadly covers the parties and "any person or company that is involved in a Dispute that [Plaintiff] pursue[s] relating to this Agreement or [Plaintiff's] loan." (Ex. 1 to Avant Decl., p. 6.)  (Emphasis added.)  Furthermore, "the word ***'Disputes' has the broadest reasonable meaning. It includes all past, present and future claims directly or indirectly***

*arising from or related to your application, this Agreement, your loan and relationship with us and any communications relating to the same. It includes claims based on contract, tort, intentional tort, fraud, negligence, agency, equity, statute or regulation, or any other sources of law, claims seeking damages or injunctive or declaratory relief and initial claims, counterclaims, cross-claims, third-party claims. It includes claims related to any prior applications or agreements. It includes extensions. It includes claims related to privacy and customer information. It includes claims related to the validity in general of this Agreement..*" (Ex. 1 to Avant Decl., p. 7.)  (Emphasis added.)  The Arbitration Provision also states in bold text that Plaintiff waives her "**rights to:  1. [h]ave juries decide Disputes. 2. Have courts, other than small-claims courts, decide Disputes**."  (Ex. 1 to Avant Decl., p. 7.)  (Emphasis in original.)

As such, Plaintiff's claims falls squarely within the broad scope of the Arbitration Provision.  Plaintiff certainly cannot show "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *See AT&T Techs.*, 475 U.S. at 650.  Indeed, none of Plaintiff's claims would exist but for Plaintiff's execution of the Loan.

In sum, all of the prerequisites under the FAA for enforcement of the Arbitration Provision are clearly satisfied in this case.  Avant's Motion to Compel Arbitration should therefore be granted.

### C.    All of Plaintiff's claims against Avant should be dismissed.

Finally, this Court should not only compel the individual arbitration of Plaintiff's claims against Avant, but it should also dismiss them.  Section 3 of the FAA addresses the procedure for handling cases where issues are referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall

on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Nonetheless, the court may also dismiss an arbitrable case when "there are no non-arbitrable claims remaining before the Court . . . "  *Noye v. Johnson & Johnson*, 2020 U.S. Dist. LEXIS 38610, at *26 (M.D. Pa. Mar. 5, 2020).

In this case, all of Plaintiff's claims against Avant relate to the Loan and its terms.  As set forth above, all of these claims clearly fall within the broad scope of the Arbitration Provision, leaving no claims asserted against Avant to be decided by this Court.  For that reason, in addition to compelling arbitration of these claims, the Court should also dismiss them, with prejudice.  *See Morina v. Neiman Marcus Group, Inc.*, 2014 U.S. Dist. LEXIS 141533, at *46 (E.D. Pa. Oct. 1, 2014) (dismissing claims and compelling arbitration); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (affirming district court's order dismissing lawsuit with prejudice after granting motion to compel arbitration); *Sanchez v. MK Indus., Inc.*, No. 1:15CV272, 2016 WL 379743, at *3 (S.D. Miss. Jan. 29, 2016) ("Because the Court finds that all of Plaintiff's claims must be submitted to arbitration, this case should be dismissed with prejudice rather than stayed."); *Blake v. Murphy Oil USA, Inc.*, No. 1:10-cv-128-SA-JSD, 2010 WL 3717245, at *6 (N.D. Miss. Sept. 14, 2010); *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (affirming district court's order dismissing an action where all claims were subject to arbitration); *see also Lewis v. UBS Fin. Servs.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) (finding that because all of the plaintiff's claims were subject to arbitration, dismissal, rather than a stay, was appropriate).

## CONCLUSION

Plaintiff should be compelled to arbitrate all of her claims against Avant, and such claims should be dismissed.  There is a valid arbitration agreement in writing; the credit transaction clearly

13

involved interstate commerce; and the Arbitration Provision is unquestionably broad enough in scope to encompass the claims that Plaintiff has asserted against Avant.

**WHEREFORE,** Avant respectfully requests that this Court compel the arbitration of the claims asserted by Plaintiff against Avant and dismiss this case, with prejudice, and award Avant any other relief to which it may be entitled.

Respectfully submitted this 2nd day of September, 2021.

McNEES WALLACE & NURICK LLC

By */s/* Devin Chwastyk _____
     Devin Chwastyk
     McNees Wallace & Nurick LLC
     100 Pine Street
     Harrisburg, PA 17101
     Tel:  717.237.5482
     dchwastyk@mcneeslaw.com

VEDDER PRICE P.C.
     Daniel P. Jackson (admitted *pro hac vice*)
     Zachary J. Watters (admitted *pro hac vice*)
     Jonathon P. Reinisch (admitted *pro hac vice*)
     222 North LaSalle Street
     Chicago, Illinois 60601-1003
     Telephone:  (312) 609-7500
     Facsimile:  (312) 609-5005
     djackson@vedderprice.com

*Attorneys for Defendant Avant, LLC.*

**CERTIFICATE OF SERVICE**

I, Devin J. Chwastyk, hereby certify that I have, this 2nd day of September, 2021, electronically filed the foregoing with the Clerk of the Court using the ECF system, which caused a copy to be served upon all counsel of record.

McNEES WALLACE & NURICK LLC

By */s/* Devin Chwastyk_____
    Devin Chwastyk
    McNees Wallace & Nurick LLC
    100 Pine Street
    Harrisburg, PA 17101
    Tel:  717.237.5482
    dchwastyk@mcneeslaw.com

VEDDER PRICE P.C.
    Daniel P. Jackson (admitted *pro hac vice*)
    Zachary J. Watters (admitted *pro hac vice*)
    Jonathon P. Reinisch (admitted *pro hac vice*)
    222 North LaSalle Street
    Chicago, Illinois 60601-1003
    Telephone:  (312) 609-7500
    Facsimile:  (312) 609-5005
    djackson@vedderprice.com

*Attorneys for Defendant Avant, LLC.*